## UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| LAWRENCE WASHINGTON JR., *et al.*, | Case No: |
| Plaintiffs, | Hon. |
| v. | Genesee County Circuit Court |
| GOVERNOR RICHARD DALE SNYDER, *et al.*, | Case No. 17-108488-NO |
| Defendants. | CLASS ACTION |

## JOINT NOTICE OF REMOVAL TO FEDERAL COURT

Defendants Daniel Wyant ("Wyant"), Bradley Wurfel ("Wurfel"), Liane Shekter Smith ("Shekter Smith"), Patrick Cook ("Cook"), Michael Prysby ("Prysby") and Stephen Busch ("Busch") (collectively, the "Removing Defendants") hereby remove this action from the Genesee County Circuit Court to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. §§ 1441, 1442 and 1446. In support of this Joint Notice of Removal, the Removing Defendants state as follows:

## BACKGROUND

1.     On January 26, 2017, Plaintiffs filed their Class Action Complaint against the Removing Defendants, among others, in the Genesee County Circuit Court.  Plaintiffs have sued the Removing Defendants in their official and individual

capacities.  The Removing Defendants were served on February 10, 2017.  A copy of the acknowledgment of service is attached as **Exhibit A,** and the Class Action Complaint is attached as **Exhibit B**.

2.      The Removing Defendants are current or former employees of the Michigan Department of Environmental Quality ("MDEQ").  Each of the Removing Defendants is being sued for alleged conduct during the course and scope of their respective employment.  Defendant Cook was a Water Treatment Specialist assigned to the MDEQ's Lansing Community Drinking Water Unit.  Defendant Prysby was the District 11 Engineer for MDEQ's Office of Drinking Water and Municipal Assistance ("ODWMA").  Defendant Rosenthal was a Water Quality Analyst assigned to the Lansing District Office of the MDEQ.  Busch was MDEQ's ODWMA Lansing District Supervisor.  Defendant Shekter-Smith was Chief of MDEQ's ODWMA.  Defendant Wurfel was MDEQ's Director of Communications, and Defendant Wyant was the Director of MDEQ.

3.      This Joint Notice of Removal is filed within thirty (30) days of service upon the Removing Defendants, taking into account Fed. R. Civ. P. 6(a)(1)(C), and is therefore timely under 28 U.S.C. § 1446(b).

4.      Only Counts I (Gross Negligence), V (Intentional Infliction of Emotional Duress), VI (Battery), IX (Common Law Fraud) and X (Silent Fraud) of the Complaint apply or may apply to the Removing Defendants.  Count I alleges

gross negligence against the Removing Defendants based on their alleged (1) failures to require corrosion control treatment of Flint River Water, to conduct proper testing of Flint's water, to require proper testing of Flint's water, and to respond to evidence that Flint's water was improperly treated; (2) misrepresentations about use of corrosion control treatment; (3) public declarations that unsafe water was safe to drink; (4) failing to recognize evidence that Flint's water was unsafe, withholding information that Flint's water was unsafe, and publicly discrediting those who claimed that the water was unsafe; and (5) failure to warn Plaintiffs that Flint's drinking water was unsafe.  That count and the other counts alleged against the Removing Defendants relate to their alleged decision-making and oversight of the City of Flint's monitoring, testing, and treatment of Flint's drinking water under the federal Safe Drinking Water Act ("SDWA"), 42 U.S.C. 300f *et seq.*, United States Environmental Protection Agency's ("USEPA's") Lead and Copper Rule ("LCR"), 40 C.F.R. Part 141 Subpart I, and other federal regulations. See e.g. **Exhibit B**, ¶¶ 130, 183, and 219.

5.      Plaintiffs have demanded a jury.

6.      As more fully described below, Plaintiffs' claims are removable to this Court by the Removing Defendants under the federal officer removal statute (28 U.S.C. § 1442), and alternatively under the substantial federal question doctrine (28 U.S.C. § 1441).

7.    In accordance with 28 U.S.C. § 1446(d), a copy of this Joint Notice of Removal is being filed with the Genesee County Circuit Court, and a copy of both notices will be served upon Plaintiffs' counsel and all other parties.

8.    Copies of all process, pleadings, and orders received by the Removing Defendants other than the Complaint (which is attached as **Exhibit B**) are attached as **Exhibit C.**

9.    By removing this action, the Removing Defendants do not waive any defenses, objections, or motions available under state or federal law.

## REMOVAL UNDER 28 U.S.C. § 1442

10.    The federal officer removal statute permits a defendant to remove a state-court action brought against "any [federal] agency or any [federal] officer (or any person acting under that officer) . . . for or relating to any act under color of such office . . . ." 28 U.S.C. § 1442.

11.    "The federal officer removal statute is not 'narrow' or 'limited.'  At the very least, it is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law."  *Willingham v. Morgan*, 395 U.S. 402, 406-07 (1969).

12.    There are three prerequisites to removal by a defendant who is not a federal officer or federal agency: (1) the defendant is a person acting under a federal officer or agency; (2) the defendant performed the actions for which the defendant

is being sued under the direction of a federal officer or agency; and (3) the defendant has raised a colorable federal defense. *See, e.g., Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010) (citation omitted); *Mesa v. California,* 489 U.S. 121, 138-39 (1989).

13.     In this case, the Removing Defendants satisfy all three elements of the federal officer removal statute.

> **I.     The Removing Defendants are Persons Acting Under Federal Officers and Agencies.**

14.     The Removing Defendants are "persons," 1 U.S.C. § 1, whose authority to regulate Michigan's public drinking water systems is derived from the SDWA, LCR, and other USEPA regulations, and whose actual regulation of Michigan's public drinking water systems occurred under USEPA's direction, control, and close supervision.

15.     As more thoroughly explained in Section II below, the USEPA has delegated authority to the MDEQ's ODWMA to act on the USEPA's behalf and regulate public drinking water systems in the State of Michigan.  Each of the Removing Defendants' allegedly improper actions or omissions occurred while the Removing Defendants were fulfilling the very duties delegated to them by the USEPA.  The Removing Defendants were standing in the shoes of the USEPA and took actions that the USEPA would otherwise have been required to take absent the formal delegation of authority to the MDEQ to enforce the federal SDWA and LCR.

In fact, the specific acts and omissions of the Removing Defendants that are at issue in this action were taken under the USEPA's direction, oversight and guidance.

## II.   The Removing Defendants' Actions For Which They Are Being Sued Were Performed Under the Direction of a Federal Officer or Agency.

16.   Congress passed the SDWA in 1974 to establish a comprehensive federal program governing drinking water in the United States. 42 U.S.C. § 330f, et seq.  The legislative history of that act makes clear that Congress authorized the USEPA to "establish Federal standards for protection from all harmful contaminants, which standards would be applicable to all public water systems, and (2) establish a joint Federal-State system for assuring compliance with these standards." H.R. Report No. 93-1185, at 1 (1974) (emphasis added).

17.   The SDWA directs the USEPA to promulgate national primary drinking water standards and to regulate public water systems. *See* 42 U.S.C. § 300f *et seq*.

18.   Specifically, with respect to the regulation of lead and copper, the USEPA, in 1991, promulgated national primary drinking water regulations ("NPDWRs") for controlling lead and copper in public drinking water. 56 Fed. Reg. 26460 (June 7, 1991). These regulations are known as the "Lead and Copper Rule" or "LCR" and are found at 40 C.F.R. §§ 141.80, *et seq*. The USEPA has since

amended the LCR several times, most notably in 2000 and 2007. *See, e.g.,* 65 Fed. Reg. 1950 (Jan. 12, 2000); 72 Fed. Reg. 57782 (Oct. 10, 2007).

19.    The USEPA's LCR applies to public water systems such as the City of Flint. *See* 40 C.F.R. § 141.80(a). Generally speaking, it requires those water systems to monitor the levels of lead and copper at consumers' taps and, under a number of different circumstances, requires those systems to employ various treatment techniques such as corrosion control treatment, source water treatment, lead service line replacement, and public education. 40 C.F.R. §§ 141.80(b) – (h).[1]

20.    The SDWA authorizes the USEPA to delegate primary enforcement responsibility for public drinking water systems to states where USEPA determines, *inter alia*, that the state: (1) has adopted drinking water regulations that are no less stringent than the national primary drinking water regulations promulgated by the USEPA; (2) has adopted and is implementing adequate procedures for the enforcement of such State regulations, including conducting such monitoring and making such inspection as required by USEPA; and (3) will keep such records and

---

[1] Notably, the LCR has been repeatedly characterized as complex, confusing, and ambiguous. Most recently, the USEPA and its Office of General Counsel determined, after several months of review, that ". . . there are differing possible interpretations of the LCR with respect to how the rule's optimal corrosion control treatment procedures [applied] which may have led to some uncertainty with respect to the Flint water system." **Exhibit D**.

make such reports with respect to its activities as required by USEPA. *See* 42 U.S.C. § 300g-2; *see also* 40 C.F.R. §§ 142.10, 142.11.[2]

21.    Based on the MDEQ's assumption of USEPA's duties under the SDWA, the USEPA provides the MDEQ with the vast majority (more than 75%) of the funding necessary to monitor and enforce the SDWA within Michigan. See MDEQ Funding Documents, **Exhibit E.**

22.    The SDWA, however, reserves tremendous oversight authority for the USEPA, including mandatory USEPA intervention in the form of notifications, advice, technical assistance, and, failing timely and sufficient state action, enforceable orders and inspections to bring water systems into compliance with federal standards. *See* 42 U.S.C. § 300g-3; *see also* 40 C.F.R. §§ 141.82(i), 141.83(b)(7), 142.19, 142.30, and 142.34.

23.    By way of example, each state with primary enforcement responsibility is required to submit to the USEPA detailed quarterly and annual reports regarding the regulation of public drinking water systems including detailed information regarding each system's compliance with the treatment techniques for lead and copper. *See* 40 C.F.R. §§ 142.15, 142.19. All of these reports are publicly available

---

[2] The USEPA first granted the Michigan Department of Public Health primary enforcement responsibility over the regulation of Michigan's public drinking water systems in 1978. 42 Fed. Reg. 44835 (Sept. 7, 1977). See Primacy Agreements, **Exhibit F**.

and the USEPA is required to, at least annually, review each state's submittals for compliance with USEPA requirements. 40 C.F.R. §§ 142.17(a)(1).

24.     If the USEPA determines that a state no longer meets its requirements, the USEPA is required to initiate proceedings to withdraw primacy approval. *See* 40 C.F.R. §§ 142.17(a)(2). If the USEPA believes a state has abused its discretion in making corrosion control or source water treatment determinations in a substantial number of cases or in cases affecting a substantial population, *the USEPA may issue an order establishing federal treatment requirements for a public water system. See* 40 C.F.R. § 142.19(a) (emphasis added).

25.     By way of further example, whenever a state revises its approved primacy program in response to new or revised federal regulations, including those regulations which relate to lead and copper, the state must submit a request to the Administrator for approval of the program revision. *See* 40 C.F.R. §§ 142.12(a)(1), 142.16(d). And, before approving the revisions, the USEPA must publish notice and provide an opportunity for a public hearing. *See* 40 C.F.R. §§ 142.13. See Primacy Agreements, **Exhibit F**.

26.     By way of further example, whenever the USEPA finds that a public water system is not in compliance with any primary drinking water regulation, the USEPA "shall provide advice and technical assistance to such State and public water

system as may be appropriate to bring the system into compliance by the earliest feasible time." 40 C.F.R. §§ 142.30.

27.    Recognizing the complexity and ambiguity of the LCR, the USEPA's commentary to its 2007 amendments to the LCR states that the USEPA will provide guidance to help systems identify source water changes that could impact optimal corrosion control. 72 Fed. Reg. 57782, 57789 (Oct. 10, 2007). The USEPA has responded to this mandate by issuing at least eleven major guidance documents, directing all aspects of a state's implementation of the LCR:

- Lead and Copper Rule Guidance Manual: Volume I: Monitoring (Sept. 1991);
- Lead and Copper Rule Guidance Manual: Volume II: Corrosion Control Treatment (EPA 811-B-92-002) (Sept. 1992);
- Guidance Manual for Selecting Lead and Copper Control Strategies (Jan. 1997);
- How to Determine Compliance with Optimal Water Quality Parameters as Revised by the Lead and Copper Minor Revisions (EPA 815-R-99-019) (Feb. 2001);
- Lead and Copper Monitoring and Reporting Guidance for Public Water Systems, EPA-816-R-02-009 (Feb. 2002);
- Lead in Drinking Water Regulation: Public Education Guidance for Community Water Systems, EPA 816-R-02-010 (June 2002);
- Revised Guidance Manual for Selecting Lead and Copper Control Strategies (March 2003);
- Lead and Copper Rule: 2007 Short-Term Regulatory Revisions and Clarifications; State Implementation Guidance, EPA 816-R-08-009 (June 2008);
- Implementing the Lead Public Education Provision of the Lead and Copper Rule: A Guide for Community Water Systems (June 2008);

- Lead and Copper Rule:  Monitoring and Reporting Guidance for Public Water Systems, EPA 816-R-10-004 (March 2010); and

- Optimal Corrosion Control Treatment Evaluation Technical Recommendations for Primacy Agencies and Public Water Systems (March 2016).

28.   The USEPA exercised its authority under the SDWA and issued an Emergency Administrative Order ("EAO") on January 21, 2016 to exert the agency's ultimate control over the the MDEQ's administration and enforcement of the federal statute. (**Exhibit G**). By issuing the EAO, the MDEQ and Flint's public water system have acted under the specific direction of the USEPA pursuant to the USEPA's EAO, including monthly operation reports, weekly conference calls, and weekly status reports to the USEPA summarizing the MDEQ's actions from January 21, 2016 to the present.

29.   The Removing Defendants are being sued for their actions taken pursuant to the USEPA's direction and control, both before January 2016 and since January 2016, as Plaintiffs' allege damages through the present day. The Removing Defendants purported liability to Plaintiffs stems from allegedly failing to adhere to federal law due to their alleged lack of compliance with the SDWA and LCR's detailed monitoring, testing, sampling, and notification requirements in overseeing the Flint water system, as administered by the Removing Defendants, and overseen and controlled by USEPA.

30.    The district court in *Clio Convalescent Center v. Mich. Dept. of Consumer and Industry Services*, 66 F. Supp. 2d 875, (E.D. Mich. 1999) (O'Meara, J.), held that a Michigan agency was entitled to federal officer removal under 28 U.S.C. § 1442, where the state agency was sued for "implementing federal regulations pursuant to its obligation under statutes, regulations, and/or contract, [and] was acting as [the federal agency's] agent." *Id*. at 877.

31.    Similar to the state agency in *Clio*, the Removing Defendants are entitled to federal officer removal because the MDEQ functions as an agent of the USEPA to implement the SDWA and LCR. The MDEQ has entered into an agreement with and been delegated authority by the USEPA to assure compliance with the SDWA and LCR, has the authority to investigate whether federal law has been violated by a public water system, and is obligated to forward monitoring results, consumer confidence reports, and SDWA and LCR violations to the USEPA. *Id.* at 876; *see also City of St. Louis v. Velsicol Chemical Corp.*, 708 F. Supp. 2d 632, 661-662 (E.D. Mich. 2010) (holding that federal officer removal was proper where defendant acted under USEPA direction and control and assisted the USEPA in performing tasks the USEPA would otherwise be obligated to perform).

32.    The Removing Defendants are, therefore, properly characterized as the USEPA's agents, acting under the USEPA's direction and control to assist with implementing and enforcing the federal SDWA and LCR.   The Removing

Defendants' actions and inactions at issue in this case were not only taken pursuant to the USEPA's LCR, its guidance documents, training manuals, quarterly and annual reviews, but they were also guided by repeated written and verbal direction from a number of USEPA officers who advised and oversaw the MDEQ's regulation of the City of Flint water system.

33.     In short, the MDEQ Defendants' assistance to the USEPA in carrying out the federal SDWA and LCR, duties the USEPA would otherwise have to perform itself, went "beyond simple compliance with the law and helped officers fulfill other basic governmental tasks." *Watson v. Philip Morris,* 551 U.S. 142, 153 (2007).

### III.     Removing Defendants Have Raised a Colorable Federal Defense.

34.     The Removing Defendants have colorable federal defenses including, without limitation: (1) preemption of Plaintiffs' claims by the SDWA (*Boler v Earley*, No. 16-10323, Docket No. 56 (E.D. Mich., O'Meara, J.); *Mays v Snyder*, No. 15-14002, Docket No. 196 (E.D. Mich., O'Meara, J.).   (*Matoon v. Pittsfield*, 980 F.2d 1 (1st Cir. 1992)); (2) absolute immunity (*Maugau v. Brierre,* 257 Fed. Appx. 525 (3rd Cir. 2007) (holding that Regional Director of Pennsylvania Department of Environmental Protection who was sued in his individual capacity, had absolute immunity from claims stemming from administrative order he issued against Plaintiffs); (3) qualified immunity (*Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008) (holding that government officials sued in their individual capacity can

be shielded from liability by qualified immunity); (4) derivative discretionary function immunity (*Adkisson v. Jacobs Eng'g Grp., Inc.,* 790 F.3d 641, 648-49 (6th Cir. 2015); and (5) assertions that the Removing Defendants complied with their delegated obligations to enforce the federal SDWA (*Magnin v. Teledyne Continental Motors,* 91 F.3d 1424, 1429 (11th Cir. 1996) ("The scope of our inquiry here is only whether Smith has advanced a colorable federal defense (including an assertion that he complied with all his federal law obligations), not whether his defense will be successful.") (citing *Mesa v. California,* 489 U.S. 121, 133 (1989)).

35.     Venue is proper in this district under 28 U.S.C. § 1442(a), because this case is pending in the Genesee County Circuit Court (Flint), which is located in the Eastern District of Michigan, Southern Division.

36.     For all these reasons, removal is proper under 28 U.S.C. § 1442.

## REMOVAL UNDER 28 U.S.C. § 1441

37.     A federal court must generally determine if a claim arises under federal law based on the well-pleaded complaint, but substantial federal question jurisdiction is an exception to the well-pleaded complaint rule. *Mikulski v. Centerior Energy Corp.,* 501 F.3d 555, 560 (6th Cir. 2007). The substantial federal question doctrine provides that "a state law cause of action may actually arise under federal law, even though Congress has not created a private right of action, if the vindication of the right under state law depends on the validity, construction, or effect of federal

law." *Id.* at 565 (internal citations omitted).

38.    Under the substantial federal question doctrine, federal jurisdiction exists when a "state-law claim necessarily raises a federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing a congressionally approved balance of federal and state judicial responsibilities." *Grable v. Sons Metal Products, Inc. v. Darue Engineering and Manufacturing,* 545 U.S. 308, 314 (2005).

39.    At the heart of Plaintiffs' Complaint are allegations that the drinking water provided to Flint residents was not safe and did not meet federal water quality standards, specifically standards related to lead.  The Removing Defendants and other Defendants were allegedly grossly negligent or otherwise liable by failing to require, ensure, implement, and advise the public regarding compliance with federal water quality standards and corrosion control requirements.

40.    The SDWA governs drinking water quality and provides detailed regulations related to water quality standards, monitoring, and testing requirements. The LCR specifically regulates lead in drinking water and provides detailed standards, monitoring, and testing protocols related to lead in drinking water. For additional information on the SDWA and LCR, see above ¶¶ 17-25.

41.    Plaintiffs' Complaint alleges that the Removing Defendants owed duties to Plaintiffs based on the federal SDWA, LCR and other standards,

regulations, monitoring, and testing requirements that were purportedly not followed and allegedly give rise to Plaintiffs' various causes of action.

42.    Plaintiffs' claims are inextricably intertwined with the construction, interpretation, and effect of the SDWA, LCR. If the Removing Defendants establish that these federal laws and regulations were not violated, Plaintiffs' claims against these Defendants are defeated.

43.    Plaintiffs' gross negligence and other claims depend on a question of federal law, primarily whether the Removing Defendants and the other Defendants complied with the SDWA, LCR, and other federal regulations during their oversight of the Flint water system. There are no theories supporting gross negligence that do not implicate the SDWA, LCR, and other applicable drinking water regulations.  In short, the Removing Defendants are being sued for carrying out the USEPA's duty, as delegated to the Removing Defendants, to ensure that public water systems such as Flint comply with the SDWA and LCR. See e.g. **Exhibit B**, ¶¶ 130, 183, and 219.

44.    This is not a garden variety state law tort action that merely references a federal law or statute. This litigation stems from a unique situation involving the Removing Defendants' implementation of federal lead regulations, and removal of this action will not open the door to removal of a vast number of purely state law claims.

45.    Whether these Defendants violated the SDWA, LCR and other federal regulations is disputed. The USEPA has admitted that the LCR is ambiguous and subject to different possible interpretations and constructions when applied to this particular situation.  **Exhibit D**.

46.    There is a substantial need for uniform interpretation of the SDWA and LCR as it applies to Flint, and the other 155,000 public water systems subject to the SDWA and LCR, that provide water to almost all Americans across the United States.

47.    As the court pointed out in *Harding-Wright v. D.C. Water and Sewer Auth.*, 350 F. Supp. 2d 102, 107 (D.D.C. 2005), "federal jurisdiction over a state law claim is appropriate when necessary to protect against inconsistent interpretation of a federal statutory regime." There is a substantial federal interest in resolving the disputed interpretations and effect of the SDWA and LCR to ensure accurate, consistent application of the federal statutes and regulations across the nation and across the various lawsuits relating to Flint's drinking water.

48.    This Court's exercise of jurisdiction over this case will not disturb a congressionally-approved balance of federal and state judicial responsibilities. Congress has placed the regulation of drinking water within the federal realm through promulgation of the SDWA, and via the USEPA's federal oversight, direction, and authority over the SDWA regulatory scheme.

49.    To the extent some of Plaintiffs' claims do not involve a substantial federal question, this Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

50.    Venue is proper in this district under 28 U.S.C. § 1441, because this case is pending in the Genesee County Circuit Court (Flint) which is located in the Eastern District of Michigan, Southern Division.

51.    A copy of the Notice of Filing of the Notice of Removal is attached hereto as **Exhibit H**.

WHEREFORE, Removing Defendants, respectfully request that this action proceed in this Court as an action properly removed.

Respectfully submitted,

FRASER TREBILCOCK
Attorneys for Liane Shekter Smith

By: /s/ *Thaddeus E. Morgan*
    Thaddeus E. Morgan (P47394)
    124 W. Allegan, Suite 1000
    Lansing, Michigan   48933
    (517) 482-0887
    tmorgan@fraserlawfirm.com

KOTZ SANGSTER WYSOCKI, P.C.
Attorneys for Stephen Busch

By: /s/ *Philip A. Grashoff, Jr.*
    Philip A. Grashoff, Jr. (P14279)
    36700 Woodward Ave., Suite 202
    Bloomfield Hills, Michigan 48304
    (248) 646-1050
    pgrashoff@kotzsangster.com

FOSTER SWIFT, COLLINS & SMITH, P.C.
Attorneys for Patrick Cook, and
Michael Prysby

CLARK HILL PLC
Attorneys for Daniel Wyant and
Bradley Wurfel

By: /s/ *Charles E. Barbieri*
    Charles E. Barbieri (P31793)
    313 S. Washington Square
    Lansing, Michigan   48933
    (517) 371-8155
    cbarbieri@fosterswift.com

By: /s/ *Michael John Pattwell*
    Michael John Pattwell (P72419)
    212 E. Grand River Ave.
    Lansing, Michigan   48906
    (517) 318-3043
    mpattwell@clarkhill.com

Dated:   March 13, 2017

## ALL MDEQ EMPLOYEE DEFENDANTS CONSENT TO AND JOIN IN THIS JOINT NOTICE OF REMOVAL

Consent to this Joint Notice of Removal by all previously served Defendants is not procedurally required. Removal pursuant to 28 U.S.C. § 1442 does not require consent from all other properly joined and served defendants. Additionally, since this Joint Notice of Removal is not based *solely* on 28 U.S.C. § 1441, consent of all other properly joined and served defendants is not required. While consent is not required to meet the procedural requirements for removal, Removing Defendants have sought the consent of all other joined and served MDEQ employee Defendants. The following Defendants have consented and join in this Removal:   Daniel Wyant, Bradley Wurfel, Liane Shekter Smith, Stephen Busch, Patrick Cook, and Michael Prysby.

Therefore, removal under 28 U.S.C. § 1441 is permitted pursuant to 28 U.S.C. § 1446(b)(2)(b), because all Removing Defendants implicated in Counts I, V, VI, IX and X, who have been served in this lawsuit, consent and join in this Joint Notice of Removal, as indicated by their signatures below.

WHEREFORE, the below designated Defendants respectfully request that this Court exercise jurisdiction over this action and grant such other relief as this Court deems proper.

Respectfully Submitted,

By: */s/ Thaddeus E. Morgan P47394*
Fraser Trebilcock
Attorney for Defendant Liane Shekter Smith


By: */s/ Charles E. Barbieri P31793 (w/ permission)*
Foster Swift Collins & Smith, P.C.
Attorney for Defendants Patrick Cook and Michael Prysby

By: */s/ Michael J. Pattwell P72419 (w/permission)*
Clark Hill PLC
Attorney for Defendants Daniel Wyant and Bradley Wurfel

By: */s/ Philip A. Grashoff Jr.  P14279 (w/permission)*
Kotz Sangster Wysocki, P.C.
Attorney for Defendant Stephen Busch


Dated:   March 13, 2017

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 13, 2017, I electronically filed the foregoing with the Clerk of the Court using the ECF system.  A copy of the foregoing will be served upon all parties of record by regular mail.


Dated:   March 13, 2017            <u> s/Thaddeus E. Morgan       </u>
Thaddeus E. Morgan (P47394)
124 W. Allegan, Suite 1000
Lansing, Michigan   48933
(517) 482-0887
tmorgan@fraserlawfirm.com

## STATE OF MICHIGAN
## IN THE EASTERN DISTRICT OF MICHIGAN

**LAWRENCE WASHINGTON JR.,**
individually and as next friend of five
minor children, **TAYLOR
WASHINGTON, MORGAN
WASHINGTON, CHLOE
WASHINGTON, MADISON
WASHINGTON, LAWRENCE
WASHINGTON; AARON SWINGER;
ANGELA WAY; CONNIE MCNEAL**,
all on behalf of themselves and a class of
all others similarly situated, et al.,

       Plaintiffs,

v

**GOVERNOR RICHARD DALE SNYDER,
DENNIS MUCHMORE,** in their individual
and official capacities, **ANDREW "ANDY"
DILLON, R. KEVIN CLINTON, DANIEL
WYANT, NICK LYON,** in their individual
capacities, **LIANE SHEKTER SMITH,
STEPHEN BUSCH, PATRICK COOK,
MICHAEL PRYSBY, BRADLEY
WURFEL, MIKE BROWN, ED KURTZ,
DARNELL EARLEY, GERALD
AMBROSE, DAYNE WALLING,
HOWARD CROFT, MICHAEL
GLASGOW, DANIEL WYANT, EDEN
WELLS, LINDA DYKEMA, NANCY
PEELER, ROBERT SCOTT,** in their
individual and official capacities, **ROWE
PROFESSIONAL SERVICE COMPANY,**
a Michigan Corporation, **LOCKWOOD,
ANDREWS & NEWNAM, INC.,** a Texas
Corporation, **LOCKWOOD, ANDREWS, &
NEWNAM P.C.,** A Michigan Corporation
**LEO A. DALY,** a Nebraska Corporation,

Case No.: 17-108488-NO

Hon. Richard B. Yuille

**VEOLIA NORTH AMERICA, INC.**, a Delaware Corporation, **VEOLIA NORTH AMERICA, LLC,** a Delaware limited liability company, **VEOLIA NORTH AMERICA OPERATING SERVICES, LLC,** a Delaware limited liability company, **EACH,** a wholly owned subsidiary of **VEOLIA ENVIRONMENT S.A.,** a French transnational Company, and the **CITY OF FLINT,** a municipal corporation, jointly and severally,

        Defendants.

## PROOF OF SERVICE

I hereby certify that on March 13, 2017,  I served a copy of the Notice of Filing Joint Removal pursuant to 28 USC §§ 1441, 1442 and 1446 upon the Clerk of the Genesee County Circuit Court, and the attorneys of record by placing the same in an envelope addressed to said individuals at their respective addresses and depositing same in the U.S. mail.


Date:  March 13, 2017         /s/ Denise R. Quaderer
                                   Denise R. Quaderer