## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LAWRENCE WASHINGTON, JR., *et al.*,

                               Case No. 17-cv-10799

        Plaintiffs,                   Hon. Mark A. Goldsmith

v.

GOVERNOR RICHARD DALE SNYDER, *et al.*,

        Defendants.
_____/

## MOTION FOR REMAND

Plaintiffs, through counsel, move this Court pursuant to 28 U.S.C. § 1447 to have the above-captioned case remanded to Genesee County Circuit Court upon the following grounds:

1.     The instant case is composed of state law tort claims against the City of Flint and individual defendants.

2.     Defendants Patrick Cook, Liane Shekter-Smith, Stephen Busch, Daniel Wyant, Michael Prysby and Bradley Wurfel (collectively, the "Removing Defendants") removed the case pursuant to the federal officer removal statute (28 U.S.C. § 1442), and the substantial federal question doctrine (42 U.S.C. § 1441).

3.     Removing Defendants claim they qualify as federal officers, because as employees of a state environmental agency, they operate under a general regulatory

scheme established by federal law.

4.    Removing Defendants also claim Plaintiffs' state tort claims are "inextricably intertwined with the construction, interpretation, and effect" of the federal SDWA and the EPA's Lead and Copper Rule.

5.    Removing Defendants are incorrect in their assertions.

6.    Removing Defendants, each former MDEQ employees, working for the state and on behalf of the State of Michigan, do not qualify as federal officers and have offered no evidence to support their assertions.

7.    The claims against Removing Defendants will turn exclusively on an analysis of Removal Defendants' conduct as assessed under state tort law principles, making removal pursuant to 28 U.S.C. § 1441 improper.

8.    Removing Defendants have also made this removal motion in the case of Mays v. Snyder and Boler v. Earley, each of which have been remanded back to the Genesee County Circuit Court for lack of evidence to support their assertions of federal officer and lack of federal question jurisdiction.

9.    This Court should remand the above-captioned case to the Genesee County Circuit Court due to lack of federal jurisdiction.

WHEREFORE, Plaintiffs respectfully request this Court to:

a.    Remand this case to the Genesee County Circuit Court; and

b.      Grant any other relief this Court deems just and proper.

Respectfully submitted,

**EXCOLO LAW, PLLC**

By:  _/s/Solomon M. Radner_
Solomon M. Radner (P73653)
26700 Lahser Rd, Suite 401
Southfield, MI 48033
(248) 291-9719
sradner@excololaw.com

**1-800-LAW-FIRM, PLLC**

By:  _/s/Ari Kresch_
Ari Kresh (P29593)
26700 Lahser Rd, Suite 400
Southfield, MI 48033
(248) 291-9712
akresh@1800lawfirm.com

**MARC J. BERN &
PARTNERS, LLP**

By:  _/s/ Chet W. Kern_
Chet Kern, Esq.
60 E. 42nd Street, Suite 950
New York, NY 10165
(212) 702-5000
ckern@bernllp.com

_Counsels for Plaintiffs_

Dated: April 11, 2017

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LAWRENCE WASHINGTON, JR., *et al.*,

                             Plaintiffs,

v.

GOVERNOR RICHARD DALE SNYDER, *et al.*,

                             Defendants.

Case No. 17-cv-10799

Hon. Mark A. Goldsmith

_____/

### MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR REMAND

Plaintiffs submit this memorandum of law in opposition to Defendants Patrick Cook, Liane Shekter-Smith, Stephen Busch, Daniel Wyant, Michael Prysby and Bradley Wurfel (collectively, "Removal Defendants") Notice of Removal to Federal Court (Dkt. 1). Removal Defendants ignore the "slim" category of cases appropriate for removal and seek to throw the federal courthouse door open, arguing that any individual, any agency, or any group directed to comply with a federal directive becomes a "federal officer," as a matter of law and thereby entitled to removal. For the reasons stated below, this Court should reject the instant improper removal and remand this case back to its proper forum to allow the State court to retain jurisdiction.

### PRELIMINARY STATEMENT

4

Plaintiffs first commenced this action on or about January 26, 2017, on behalf of tens of thousands of City of Flint water users against GOVERNOR RICHARD DALE SNYDER,  DENNIS MUCHMORE, ANDREW "ANDY" DILLON, R. KEVIN CLINTON,  DANIEL WYANT, NICK LYON, LIANE SHEKTER SMITH, STEPHEN BUSCH, PATRICK COOK, MICHAEL PRYSBY, BRADLEY WURFEL, MIKE BROWN, ED KURTZ, DARNELL EARLEY, GERALD AMBROSE, DAYNE WALLING, HOWARD CROFT, MICHAEL GLASGOW, EDEN WELLS, LINDA DYKEMA, NANCY PEELER, ROBERT SCOTT, ROWE PROFESSIONAL SERVICE COMPANY, LOCKWOOD, ANDREWS & NEWNAM, INC., LOCKWOOD, ANDREWS, & NEWNAM P.C., LEO A DALY, VEOLIA NORTH AMERICA, INC., VEOLIA NORTH AMERICA, LLC., VEOLIA NORTH AMERICA OPERATING SERVICES, LLC, VEOLIA ENVIRONNEMENT S.A., and the CITY OF FLINT.  Plaintiffs maintain that those state and city officials were grossly negligent in making or approving the April 25, 2014 decision to substitute safe water supplied by the City of Detroit with highly corrosive and unsafe water from the Flint River (*See generally*, Dkt. 1, Ex. B, Complaint). Plaintiffs further assert that Defendants were grossly negligent in creating, and perpetuating the destabilization of the Flint water infrastructure and failing to properly monitor the lead levels of the Flint River water while coming out of the individual taps of Flint homes and residences, schools,

hospitals, correctional facilities and other public locations resulting in exposing and re-exposing Flint water users to toxic Flint River water, including thousands of children, resulting in significantly elevated blood lead levels in Flint's children who were so exposed and re-exposed.   The Complaint solely alleges state causes of action (*See Id.* at ¶¶ 210-335, asserting claims in gross negligence, professional negligence, common law fraud, silent fraud, battery, intentional infliction of emotional distress, unjust enrichment, and breach of contract as well as seeking injunctive relief.).

Removal Defendants are current and former employees of the Michigan Department of Environmental Quality ("MDEQ"). In a mangled read of federal statute and case law, Removal Defendants claim they are entitled to remove this action to federal court based on the federal officer removal statute, 28 U.S.C. § 1442(a)(1), because, per their assertions, they were essentially acting as agents of the federal government (Dkt. 1, Notice of Removal at ¶¶ 13-33). Notably, this posturing stands at odds with the Environmental Protection Agency's ("EPA") Emergency Administrative Order, which states, in part, that the MDEQ "is an instrumentality of the State" (Exhibit 1, EPA, Emergency Administrative Order, ("EPA Order"), at ¶ 41).

Rather than "federal agents," a better description of the relationship between the EPA and the State and City departments in question is contentious. EPA

Administrator Gina McCarthy, appearing before Congress, stated:

> Under the Safe Drinking Water Act, Congress gives states the primary responsibility to enforce drinking water rules for the nation's approximately 152,000 water systems, but EPA has oversight authority. Typically, EPA has a strong relationship with states under the Act. But looking back on Flint, from day one, the state provided our regional office with confusing, incomplete and incorrect information. **Their interactions with us were intransigent, misleading and contentious**. As a result, EPA staff were unable to understand the potential scope of the lead problem until a year after the switch and had insufficient information to indicate a systemic lead problem until mid-summer of 2015. (Exhibit 2, Testimony of Gina McCarthy, Administrator U.S. Environmental Protection Agency before the House Committee on Oversight and Government Reform, Mar. 17, 2016) (emphasis added).

While also contentious, MDEQ Director Keith Creagh did acknowledge that the State, not the EPA, "is responsible [in Flint] for ensuring compliance with the Lead and Copper Rule and Safe Drinking Water Act." (*See* Exhibit 3, Testimony of Keith Creagh, Director, Michigan Department of Environmental Quality, before the House Committee on Oversight and Government Reform, Feb. 3, 2016).

Removing Defendants' Notice of Removal lacks factual support for their novel position. Removal Defendants fail to explain how the requirements of the federal Safe Drinking Water Act controlled and caused their conduct as alleged in this case (indeed, Plaintiffs allege that Removal Defendants' conduct was outside the requirements and parameters of the federal statute). Removal Defendants do not identify a single federal officer who directed their conduct. Instead they claim that because Congress authorized the EPA to delegate primary enforcement

responsibility under the Safe Drinking Water Act ("SDWA"), 32 U.S.C. 300f *et seq.*, to states, and because EPA promulgated national drinking water standards that pertain to lead and copper, any conduct regarding those standards makes these Defendants the EPA's agents.

Removal Defendants further allege that they are entitled to removal under substantial federal question jurisdiction because Plaintiffs have alleged violations of the federal SDWA, and, therefore, their state tort claims "are inextricably intertwined with the construction, interpretation, and effect" of the federal law. That is simply not the case. The determination of whether Removal Defendants were grossly negligent in their decision to substitute safe water from the City of Detroit with unsafe, untreated water from the Flint River from a water treatment plant unable to provide safe drinking water,  and in their monitoring of – or failure to monitor – lead levels in the drinking water, and in their bad faith conduct when they falsely misrepresented  assured, reassured and perpetuated the Flint water users use of and that the Flint water was safe will not turn on nuanced interpretations of federal law. This Genesee County Circuit Court action turns on state law.

For this and other reasons set forth below, the Court should deny the Removal Defendants' Notice of Removal and remand this matter back to the Genesee County Circuit Court.

## ARGUMENT

### I.    Removal Defendants Are Not Agents of the Federal Government And Are Not Entitled to Removal Under 28 U.S.C. § 1442(a)(1)

The Removal Defendants are not federal officers.  The federal officer removal statute provides for removal to federal court for actions that are commenced in state court against:

> [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of revenue. 28 U.S.C. § 1442(a)(1).

In considering the application of this provision, additional points merit observation. The Sixth Circuit has confirmed that the party seeking removal bears the burden of demonstrating that this Court has jurisdiction. *See Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2005). Additionally, the Court should strictly construe the removal statute and "resolve[] all doubts in favor of remand." *Id.* at 550 (*citations omitted*).

When a defendant is not a federal officer, that defendant must satisfy all elements of a three-pronged test to entitle it to removal under 28 U.S.C. § 1442(a)(1): First, it must establish that it is a "person" within the meaning of the statute "acting under" a federal officer or agency. Second, it must demonstrate that it performed the actions for which it is being sued "under color of [federal] office" or "on account of

9

any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of revenue." Third, it must show that it raised a colorable federal defense. *See, e.g., Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010).  Removal Defendants cannot and do not satisfy this test.

### A. Removal Defendants Were Not "Acting Under" A Federal Officer or Agency.

As to the first prong, the Removal Defendants were not "acting under" a federal officer or agency when, among other things, they made, approved or implemented the decision to switch Flint's water source. Defendants assert that their authority to regulate Michigan's public drinking water systems is derived from federal law and regulations, and that "actual regulation of Michigan's public drinking water systems occurs under the EPA's direction, control, and close supervision" (Dkt. 1, Notice of Removal at ¶ 15). They fail, however, to set forth any connection between the actions for which they are being sued and direction from any federal officer or agency (*See, e.g., id.* at ¶ 32) (reaching the conclusion that they can be properly characterized as EPA agents without providing the requisite facts that justifies such a conclusion).[1]

---

[1] Defendants imply that the EPA entered an "agreement" with the MDEQ as minimal support for their argument (See Dkt. 1, Notice of Removal at ¶ 31). Removal Defendants' characterization is self-serving and inherently inaccurate. While the EPA did impose an Emergency Administrative Order in January 2016 (see Exhibit 1), that Order found that the "City, MDEQ and the State have failed to take adequate measures to protect public health, Administrative Order at ¶¶ 34, 47, and laid out actions that the respondents must take, id. at ¶¶ 50-68. The Order further noted the EPA may take various actions, including the imposition of a civil penalty of up to $21,500 per day of violation, if the respondents violate, fail or refuse to comply with any terms (Id. at ¶ 71). Such punishment undercuts any suggestion that the Order is an agreement that, as asserted, "clearly demonstrate[s]," that the Removal Defendants are federal agents. (See Dkt. 1, Notice of Removal at ¶ 28).

It is well settled that federal regulation and supervision, standing alone, do not satisfy the statute's "acting under" requirement.   *Bennett*, 607 F.3d at 1086. In *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142 (2007), the Supreme Court held that the Federal Trade Commission's heavy regulation and supervision of a cigarette-manufacturing firm's product-testing did not, standing alone, satisfy the statute's "acting under" requirement. The Supreme Court noted that the word "under" refers to a relationship in which one party holds a "superior position or office," and that "precedent and statutory purpose make clear that the private person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or task of the federal superior." *Id.* at 151-52. Simply complying with – or violating – federal law does not constitute the type of help or assistance necessary to bring a person within the scope of the federal officer removal statute. *Id.* Furthermore, the action taken to assist the federal superior must be one that "the Government itself would have had to perform," were it not for the purported agent's assistance. *Id.* at 152. Removal Defendants do not go so far as to allege that the federal government would have had the authority to switch Flint's water source.

The fact that Removal Defendants were operating under a scheme involving a federal regulation when they were performing the conduct that gave rise to Plaintiffs' tort claims does not rise to the level of "acting under" a federal officer

or agency for purposes of the removal statute.[2]

###    B.    Removal Defendants' Actions, For Which They Are Being Sued, Were Not Performed Under Color of Federal Office.

Under the second prong, Defendants must show that the actions for which they are being sued were performed "under color" of federal office, *or* "on account of any right, title, authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of revenue." 28 U.S.C. § 1442(a)(1). Here, Removal Defendants erroneously allege that they were acting under color of federal office.

To satisfy the second requirement for removal, a defendant "must show a nexus, a 'causal connection' between the charged conduct and [the] asserted official authority." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999) (*quoting Willingham v. Morgan*, 395 U.S. 402 (1969)). "In other words, the removing party must show that it is being sued because of the acts it performed at the direction of the federal officer." *Bennett*, 607 F.3d at 1088. Strict adherence to government regulations or specifications that compel specific conduct may also satisfy this prong. *See, e.g., Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 399-400 (5th Cir. 1998) (causal connection found where contractors produced Agent

---

[2] Furthermore, without going into a lengthy discussion on federalism, Michigan's authority to regulate its drinking waters is not "derived" from the federal Safe Drinking Water Act. Like many federal environmental statutes, the SDWA sets minimum safety standards for states to follow but does not affect states' respective authority to adopt or enforce their own laws or regulations regulating drinking water systems. *See* 42 U.S.C. § 300g-3(e).

Orange in accordance with government specifications); *see also, Jefferson County*, 527 U.S. at 432 (stating that a defendant "must demonstrate that the acts for which they are being sued … occurred *because of* what they were asked to do by the Government") (*emphasis in original*).

In this case, however, Removal Defendants have not alleged any sort of causal connection between the actions for which they are being sued and direction from a federal officer or agency. Nor do they allege that their conduct is the result of their adherence to federal laws or regulations. Instead, they provide a general description of the delegation of enforcement under the SDWA to the states, *see* Notice of Removal at ¶¶ 18-28, with no specific allegations as to how the federal law controlled their actions.

The two Eastern District of Michigan cases cited by Removal Defendants in support of their argument are inapposite. In *Clio Convalescent Center v. Michigan Dept. of Consumer and Industry Services*, 66 F.Supp.2d 875 (E.D. Mich. 1999), the plaintiff, a state licensed nursing home certified to participate in the federal Medicare and state/federal Medicaid programs, had been investigated by the Michigan Department of Consumer & Industry Services ("MDCIS"). *Id.* at 876. MDCIS found violations of a federal regulation, and based on these violations, MDCIS recommended to the federal Health Care Financing Agency ("HCFA") that civil money penalties of $3050 per day be assessed. *Id.* The plaintiff filed a complaint in

state court alleging that when MDCIS determined the penalties to recommend to HCFA, it was implementing policies that had not been promulgated pursuant to Michigan's Administrative Procedure Act. *Id.* The Secretary of HCFA intervened in the case and removed the action to federal court pursuant to 28 U.S.C. § 1442(a)(2). *Id.* Plaintiff filed a motion for remand saying that § 1442(a)(2) was inapplicable because it was suing a state agency for violations of state law and the Michigan constitution. *Id.*

The court in *Clio*, found that removal was appropriate because MDCIS was acting as HCFA's agent when it recommended penalties to the federal agency. *Id.* at 876-877. Under a federal Medicaid/Medicare law, 42 U.S.C. § 1395aa, the Secretary could enter into an agreement with a state to ensure compliance with federal certification requirements, and that pursuant to the agreement, the state acts on behalf of the Secretary and the Secretary is the real party in interest in administering the program established by the law. *Id.* at 876. In fact, the court found that it was not necessary for the Secretary to have intervened because it was the real party in interest. *Id.* at 877. The court also found that when MDCIS was assessing penalties for its recommendation, it only followed federal regulations that establish requirements "when certain remedies must be imposed as a matter of federal law." *Id.* Because the state was bound by and following the federal regulations, the court found removal was appropriate.

In this case, Removal Defendants have not identified any specific federal laws or regulations that controlled *and caused* the conduct for which they are being sued. They have not alleged to have entered any agreements whereby they were acting on behalf of the EPA as the real party in interest when, among other things, they made or approved the decision to switch Flint's water source, nor has EPA intervened in this action on their behalf.

A determinative factual distinction thus exists between *Clio* and the immediate facts in this case. The case law indicates that the *Clio* defendant *entered an express written agreement* with the U.S. Department of Health and Human Services ("HHS"). (*Emphasis given*). In that agreement, the parties agreed that "the Secretary of HHS is 'the real party in interest in administering the program established by the Act.'" *Id.* at 876 (citing "Agreement at 5"). No such agreement exists here; certainly, the EPA did not identify itself as the "real party in interest" within the Administrative Order.

Similarly, the facts in *City of St. Louis v. Velsicol Chemical Corp.*, 708 F.Supp.2d 632 (E.D. Mich. 2010), bear no resemblance to the claims raised by Removal Defendants herein.  In *City of St. Louis*, the plaintiff brought claims against trusts that were created under a settlement to administer the bankruptcy estate of a former owner of a contaminated site.  The trusts resolved claims of the United States and state parties for clean-up costs associated with the site and held money that was

to be used for environmental remediation.  The United States intervened in the action and argued that EPA monitored and controlled the trusts and there was a causal connection between the trusts' conduct for which they were being sued and EPA's directives. The court found that removal under 28 U.S.C. § 1442(a)(1) was appropriate, in part, because the trusts "assisted the EPA in performing a task that the federal government would otherwise to be obligated to perform" itself. *Id.* at 662. Absent the settlement agreement establishing the trusts, the United States would have been obligated to recover funds for cleanup under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C.S. § 9601 *et seq.*

As noted, Defendants bear the burden to demonstrate that removal is appropriate.  While they attached a variety of exhibits to the Notice of Removal, they did not include a single affidavit, document, or exhibit that satisfies their burden or that demonstrates that these Removal Defendants were acting as agents of the EPA when they engaged in the tortious conduct alleged in Plaintiffs' State Court Complaint. In the absence of any causal connection between any kind of direction from the federal government and Removal Defendants' actions that give rise to Plaintiffs' state tort claims, Removal Defendants fail to satisfy this this prong.

### C.    Removal Defendants Have Raised No Colorable Federal Defense.

Given that Removal Defendants cannot satisfy the first two parts of the three-

part test for removal, this Court need not even address whether Removal Defendants have raised a colorable defense. It should be noted, however, that Michigan has its own statutory and common law standards for addressing any governmental immunity defenses of state officials from state tort claims, and that in *Matoon v. Pittsfield*, 980 F.2d 1 (1st Cir. 1992), the court found that the federal Safe Drinking Water Act preempted *federal* common-law nuisance claims.

II.   **Plaintiffs' State Tort Claims Against Removal Defendants Do Not Turn on Interpretations of the Federal Law and Removal is Not Appropriate under "Substantial Federal Question" Jurisdiction**

Invoking substantial federal question doctrine, Removal Defendants further argue that Plaintiffs' state court action should be removed to federal court under 28 U.S.C. § 1441. They claim that Plaintiff's state tort claims are "inextricably intertwined with the construction, interpretation, and effect" of the federal SDWA and the EPA's Lead and Copper Rule (Dkt. 1, Notice of Removal at ¶ 41). While Plaintiffs do allege that the Removal Defendants failed to comply with federal law, their state causes of action turn exclusively on an analysis of the Removal Defendants' conduct as assessed under state tort law principles.

"[T]he 'arising under' gateway into federal court in fact has two distinct portals: 1) litigants whose causes of action are created by federal law, and 2) state-law claims that implicate significant federal issues." *Hampton v. R.J. Corman R.R. Switching Co. LLC*, 683 F.3d 708, 711 (6th Cir. 2012) (citing *Eastman v. Marine*

*Mech. Corp.*, 438 F.3d 544, 550 (6th Cir. 2006) (*internal quotations omitted*).

The complaint does not include a cause of action created by federal law. When determining whether a federal issue is at hand, "…the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Plaintiffs' claims of gross negligence (Count I), intentional misconduct, fraud, silent fraud, battery, and intentional infliction of emotional distress (Count II) are state common law tort claims. Plaintiffs do not raise a federal issue.

The complaint does not implicate significant federal issues. Removal Defendants argue that the gross negligence claims are rooted in compliance with the SDWA and the Lead and Copper Rule, which requires interpretation. This argument is contrary to the holding in *Hampton*, where the Sixth Circuit Court of Appeals specifically rejected the possibility of creating a federal issue out of a "garden-variety state tort claim" in a situation where the violation of a federal statute served as mere support for a state negligence claim. *See* 683 F.3d at 712. Plaintiffs' complaint does not state a claim with an available federal cause of action. Plaintiffs cite the Defendants' failure to comply with federal law as evidence of gross negligence and other common law torts. For these reasons, the Court should reject Removing

Defendants' removal based on substantial federal question jurisdiction.

Contrary to Removal Defendants' assertion that this litigation stems from a "unique situation" involving the implementation of federal lead regulations and that removal of this action "will not open the door to removal of a vast number of purely state law claims," following Removal Defendants' reasoning could indeed open a floodgate. Removal Defendants' arguments are based on little more than the fact that they, as employees of a state environmental agency, operate under a general regulatory scheme established by federal law. In fact, many federal environmental laws delegate enforcement responsibilities to the states.[3] If that alone is enough to establish an "agent relationship" with the federal government or invoke substantial federal question doctrine in state law actions, then the federal courts are likely to see an influx of state law cases removed to federal courts.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court remand this matter back to State court (Genesee County) and any other relief as this Court deems reasonable, just and proper.

---

[3] In addition to the SDWA, these federal laws include the Clean Air Act ("CAA"), 42 U.S.C. §7401 et seq., the Clean Water Act ("CWA"), 33 U.S.C. §1251 et seq., the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §136 et seq., and the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §6901 et seq.

Dated: April 11, 2017                      Respectfully submitted,

                                           **EXCOLO LAW, PLLC**

                                           By: _/s/Solomon M. Radner_
                                               Solomon M. Radner (P73653)
                                               26700 Lahser Rd, Suite 401
                                               Southfield, MI 48033
                                               (248) 291-9719
                                               sradner@excololaw.com

                                           **1-800-LAW-FIRM, PLLC**

                                           By: _/s/Ari Kresch_
                                               Ari Kresh (P29593)
                                               26700 Lahser Rd, Suite 400
                                               Southfield, MI 48033
                                               (248) 291-9712
                                               akresh@1800lawfirm.com

                                           **MARC J. BERN &
                                           PARTNERS, LLP**

                                           By: _/s/ Chet W. Kern_
                                               Chet Kern, Esq.
                                               60 E. 42nd Street, Suite 950
                                               New York, NY 10165
                                               (212) 702-5000
                                               ckern@bernllp.com

                                           _Counsels for Plaintiffs_

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that the foregoing instrument was filed with the U.S. District Court through the ECF filing system and that all parties to the above cause were served via the ECF filing system on April 11, 2017.

Dated: April 11, 2017

*<u>/s/Solomon M. Radner</u>*
Solomon M. Radner
